IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DARIUS PITTMAN,

       Petitioner,

v.

STEVE FRANKE,

       Respondent.

Case No. 2:12-cv-01268-SI

OPINION AND ORDER

Kristina S. Hellman, Assistant Federal Public Defender
101 S.W. Main Street, Suite 1700
Portland, Oregon 97204

    Attorney for Petitioner

Ellen F. Rosenblum, Attorney General
Kristen E. Boyd, Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, Oregon 97310

    Attorneys for Respondent

1 - OPINION AND ORDER

SIMON, District Judge.

Petitioner brings this habeas corpus case pursuant to 28 U.S.C. § 2254 challenging the legality of his underlying state-court convictions for Aggravated Murder and First Degree Burglary. For the reasons that follow, the Amended Petition for Writ of Habeas Corpus (#10) is denied.

## BACKGROUND

On November 28, 2006, petitioner burgled the home of 76-year-old Florence Boatright,[1] severely beating and strangling her to death in the process. Petitioner initially denied having anything to do with the crime. When his fingerprint was found in the victim's home, petitioner admitted being part of the burglary, but only as the driver. Respondent's Exhibit 132. It was later determined that the victim had petitioner's DNA beneath her fingernails,[2] thereby identifying petitioner as the key suspect in the murder. Respondent's Exhibit 124, p. 4. Petitioner moved to suppress that evidence, but was unsuccessful.

Against this difficult backdrop, petitioner's two trial attorneys were left to advise him as to how to proceed. The State

---

[1] Petitioner had burgled the same home previously and felt it was an easy target. Respondent's Exhibit 136, p. 34.

[2] As seen later in this Opinion, the trial judge recalled the evidence in the opposite manner. He believed that it was Ms. Boatwright's DNA that was found under petitioner's fingernails. Respondent's Exhibit 105, Sent. Tr., p. 60. This distinction is immaterial to this Opinion.

2 - OPINION AND ORDER

elected not to move ahead with a capital prosecution, thus petitioner faced a sentence of life imprisonment either with or without the possibility of parole if convicted. ORS 163.150. During plea negotiations, petitioner's attorneys conferred with the prosecuting attorney who confirmed their impression that the trial judge would be inclined to give less than the maximum available sentence if petitioner elected to plead guilty. Respondent's Exhibit 129, p. 3. They also conferred with another defense attorney who was representing petitioner on unrelated charges in Linn County, and all three attorneys agreed that the particular sentencing judge assigned to petitioner's case would be favorably disposed to imposing less than a true life sentence if he pled guilty and accepted responsibility. Respondent's Exhibit 133, pp. 2-3. They settled on a strategy whereby petitioner would plead guilty and, at sentencing, petitioner would take full responsibility for his actions, ask for a second chance, demonstrate remorse, and be completely honest. *Id* at 3.

Pursuant to this strategy, petitioner entered a guilty plea and his attorneys were able to produce 37 supportive letters from petitioner's family, friends, and former employers showing petitioner to be a good person who had become a victim of his own drug use. Respondent's Exhibit 125. At his sentencing hearing, petitioner apologized to the victim's family, and petitioner's own

3 - OPINION AND ORDER

family testified on his behalf. The trial judge, however, determined that a true life sentence was appropriate:

> The Court understands that the appropriate sentence is life without parole, and the burden is on the defense to show mitigation that the defendant deserves a 30 plus year sentence as opposed to life, and that burden that - the duty is to show mitigation. I think the first thing the Court would like to mention is the comments by all the families, both the victim's and the defendant's. There is no doubt that Mr. Pittman did a significant job of destroying both families. And it needs to be said, it includes his family, and, frankly, that's true in all murder cases. In regards to the pleas, I agree with Mr. Lipton that he had a right and that the attorneys had a duty to try the motion to suppress. That's what they should do, and I don't think that should affect the court's sentence. But then again, to the Court, to the authorities, Mr. Pittman denied everything up and until the [DNA] evidence of Ms. Boatwright's skin under his fingernails came, and in essence he didn't admit until that happened and the case became bulletproof. I've looked at the letters and I don't doubt the majority of them. The thing the Court finds interesting about them is that the overwhelming majority of them came from Hawaii and prior to his arrival in Oregon and reflect a pretty good kid. Drugs seem to be pervasive in our society and certainly they had an affect on Mr. Pittman, but the fact remains the overwhelming number of drug users, by a substantial, substantial percent, do not commit murder. That was his choice. Although certainly I don't doubt he wasn't affected by drugs, but it in fact - and his grabbing of the gun in Linn County and the threats on his girlfriend lead me to the conclusion that Mr. Pittman is a dangerous person and continues to be a dangerous person. In all cases, the Court looks for something redeemable in a defendant and looks for a learning curve. Assuming that Mr. Pittman did the DUI in Hawaii and the drugs and a Forgery, basically since August of

4 - OPINION AND ORDER

> 2005, we've had a mini crime wave. I count, including Hawaii, Linn County, the two Boatwright incidents, the two assaults, incidents on the girlfriend, the two snowboard thefts and theft of the lady's purse – and I might add she was dang lucky she didn't catch him or she could have been seriously injured – we have 10 criminal episodes involving 17 crimes. From the vicious assault on Florence Boatwright or breaking into her house before, Mr. Pittman has shown he's learned nothing. The crime continues. Mr. Pittman made absolutely no attempt to rehabilitate himself. Up until this morning, Mr. Pittman has not shown the community or this Court any reason for redemption. Therefore, the Court is sentencing him to life without parole.
>
> \* \* \*
>
> Mr. Pittman, you had 10 criminal episodes which meant you had nine chances to turn yourself around. You didn't do a thing. You deserve life without parole.

Ex. 105, Sent. Tr., pp. 59-61.

Petitioner did not take a direct appeal and instead filed for post-conviction relief ("PCR") in Umatilla County alleging that his trial attorneys were ineffective when they failed to: (1) adequately investigate his psychological and social histories; and (2) present mitigation evidence at sentencing. Respondent's Exhibit 106. The PCR trial court denied relief on both of these claims. Respondent's Exhibit 143. The Oregon Court of Appeals affirmed this decision without opinion, and the Oregon Supreme Court denied review. Respondent's Exhibits 147-148.

With the assistance of appointed counsel, petitioner filed his Amended Petition for Writ of Habeas Corpus on August 14, 2012

5 - OPINION AND ORDER

wherein he raises seven grounds for relief containing a total of approximately 30 claims. Respondent asks the court to deny relief on the Amended Petition because: (1) most of petitioner's claims were not fairly presented to Oregon's state courts and are now procedurally defaulted; and (2) the Oregon state courts properly denied the claims petitioner did adequately preserve.

## DISCUSSION

### I. Unargued Claims

As previously noted, petitioner raises approximately 30 claims in his Amended Petition. In his supporting memorandum, however, petitioner chooses to brief two claims of ineffective assistance of counsel: (1) whether his attorneys failed to adequately investigate his background and advise him of potential mental defenses; and (2) whether his attorneys failed to develop and present available mitigation evidence at sentencing.

Petitioner does not argue the merits of his remaining claims, nor does he address any of respondent's arguments as to why relief on these claims should be denied. As such, petitioner has not carried his burden of proof with respect to these unargued claims. *See Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (petitioner bears the burden of proving his claims). Even if petitioner had briefed the merits of these claims, the court has examined them based upon the existing record and determined that they do not entitle him to relief.

6 - OPINION AND ORDER

## II. Standard of Review

An application for a writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's findings of fact are presumed correct, and petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant relief "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id* at 413. The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous.

7 - OPINION AND ORDER

*Id* at 410. The state court's application of clearly established law must be objectively unreasonable. *Id* at 409.

## III. Analysis

### A. Failure to Adequately Investigate Background and Advise of Potential Mental Defenses

Petitioner claims that his trial attorneys unreasonably limited the scope of their investigation by failing to inquire into his mental health history and history of drug abuse, particularly with respect to the months and days leading up to the offense in question. He believes that additional investigation, including a psychological evaluation, would have revealed severe psychological problems that would have provided him with a defense to the intent element of Aggravated Murder. He therefore concludes that, due to the allegedly deficient investigation, he was not adequately advised of his options prior to entering his guilty plea.

Because no Supreme Court precedent is directly on point that corresponds to the facts of this case, the court uses the general two-part test established by the Supreme Court to determine whether petitioner received ineffective assistance of counsel. *Knowles v. Mirzayance*, 556 U.S. 111, 122-23 (2009). First, petitioner must show that his attorneys' performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984). Due to the difficulties in evaluating attorney performance, courts must indulge a strong presumption that the

conduct falls within the "wide range of reasonable professional assistance." *Id* at 689.

Second, petitioner must show that his attorneys' performance prejudiced the defense. The appropriate test for prejudice is whether the petitioner can show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id* at 694. In proving prejudice, a petitioner who has pled guilty or no contest to an offense must demonstrate that there is a reasonable probability that, but for the errors of his attorneys, he would not have entered such a plea and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). When *Strickland's* general standard is combined with the standard of review governing 28 U.S.C. § 2254 habeas corpus cases, the result is a "doubly deferential judicial review." *Mirzayance*, 129 S.Ct. at 1420.

During the course of his PCR trial, petitioner submitted a psychological evaluation from Dr. Robert G. Stanulis. Dr. Stanulis opined that petitioner had suffered from Major Depression since the age of 13, and that his drug use was a psychologically involuntary choice because he used the drugs in an effort to manage his depression. Respondent's Exhibit 111. However, Dr. Stanulis' evaluation was equivocal in that he stated "[a]n evaluation might even find that his underlying mental disease or defect of Major Depression made him unable to control his ingestion of drugs, thus

9 - OPINION AND ORDER

making him eligible for both diminished capacity and [Guilty Except for Insanity] findings." *Id* at 2. He was similarly equivocal while testifying at petitioner's PCR trial, claiming that "one needed to look real seriously at" the issue of whether petitioner's depression and resulting methamphetamine use might have prevented him from forming the intent to murder Ms. Boatwright. Respondent's Exhibit 142, p. 58.

The PCR trial court rejected petitioner's claim, and found that Dr. Stanulis' opinion failed to add anything meaningful. In doing so, it issued the following decision in the form of a General Judgment:

    A.    Insufficient evidence that a psychological exam would have in any way assisted in negotiations or trial.

    B.    There is insufficient evidence that an intent defense would have affected the outcome.

    C.    Trial attorney did not engage either a psychologist

    D.    or mitigation expert for trial. Although this court would have expected that evidence (but this court's expectation isn't a <u>constitutional</u> requirement) if it were the trial court, the trial attorney did present evidence from friends & family.

    E.    Nothing in Dr. Stanulis's evaluation added to the essentials that the court knew from this case and from common judicial experience-people commit horrible crimes when on

10 - OPINION AND ORDER

> F.  meth-even if they are basically ok people. But not everyone on meth commits a planned, brutal murder. **The trial court was not persuaded that petitioner could ever safely return to the community.**

Respondent's Exhibit 143 (emphasis in original).

Under Oregon law, where the State elects to forego a capital prosecution, the presumptive sentence where one is found guilty of Aggravated Murder is life without the possibility of parole. The defendant may argue in favor of mitigation and, if successful, will receive a life sentence with the possibility of parole after 30 years. ORS 163.150(3)(a); ORS 163.105(c).

As noted in the Background of this Opinion, petitioner's attorneys believed that the best strategy at sentencing was to have him accept full responsibility for his crimes and express remorse. This strategy was the product of their more than 50 years of collective experience practicing in Marion County and their familiarity with the "individual approaches of various Marion County Judges to criminal trials, pleas, and sentencing." Respondent's Exhibit 133, p. 2. They believed that any attempt to deflect blame due to mental issues and/or drug use would only give the trial judge greater reason to impose the presumptive true life sentence. This was a strategic decision that is not only entitled to deference, but also was appropriate given the difficult facts of petitioner's case. Indeed, proceeding to trial with a case that petitioner no realistic chance of winning would simply allow the

11 - OPINION AND ORDER

inflammatory facts of the case to be brought out and highlighted,[3] greatly reducing petitioner's chance of a sentence that included the possibility of parole.

In addition, the PCR trial court was correct that Dr. Stanulis' evaluation was inadequate to support the contention that petitioner suffered from a mental disease or defect that might have affected his ability to form the requisite intent for Aggravated Murder. Dr. Stanulis did not find that petitioner suffered from any mental disease that precluded him from forming the intent required for his conviction. Petitioner's use of methamphetamine to cope with his depression does not compel the conclusion that petitioner could not form the intent necessary to support a conviction for Aggravated Murder. In this regard, petitioner did not demonstrate to the PCR trial court that a psychological evaluation would have made a material difference in his case.

Moreover, petitioner admitted during his PCR deposition that methamphetamine and depression did not cloud his mind so as to "make it hard for [him] to decide to burglarize that home and know that it's an easy place to go. . . ." Respondent's Exhibit 136, p. 34. He recalled the killing vividly and stated that he found

---

[3] The evidence would have shown that petitioner had burgled the Ms. Boatwright's home before, and returned again on her 60th wedding anniversary where he "savagely attacked [the] elderly woman and beat her so severely that she would likely have died from the blunt force trauma to her face and head. [Petitioner] then strangled the victim to death with a telephone cord around her neck." Respondent's Exhibit 121.

the victim's yelling to be stressful, prompting him to strangle her after the beating in order to incapacitate her. *Id* at 21-23. He also testified during his PCR trial that he had not stolen the victim's wedding ring (which was missing), and that it simply was not possible that he took it off her hand and did not remember. *Id* at 63. The clarity and certainty of these recollections are inconsistent with a finding that petitioner lacked the intent required for an Aggravated Murder conviction.

Given the fingerprint and DNA evidence identifying him as present at the scene of the crime and the victim's attacker, petitioner faced a certain conviction if he proceeded to trial. Nothing in the PCR record shows that he had a legitimate defense to his ability to form the intent required for conviction, and his attorneys made a reasonable strategic decision to advise petitioner to plead guilty and take responsibility for his actions in the hope that he would be given a more lenient sentence. As a result, the PCR trial court's decision denying relief on this claim did not constitute an unreasonable determination of the facts in light of the evidence presented, nor was it an unreasonable application of clearly established federal law.

### B. **Failure to Present Mitigation Different Evidence**

Petitioner also asserts that his attorneys were constitutionally ineffective when they presented mitigation evidence at sentencing that focused almost entirely on his

13 - OPINION AND ORDER

character and did not rebut the State's narrative of his criminal history, risk of future dangerousness, or mental state leading up to the offense. He faults his attorneys for not exploring his mental health history as he believes that a psychological evaluation would have provided empirical evidence that he presented virtually no risk of future dangerousness.

Petitioner repeatedly advised his attorneys that a psychological evaluation would not be helpful and instructed them not to pursue such a tactic. Respondent's Exhibit 133, pp. 1-4. While this does not alleviate the burden on the attorneys to order such an evaluation where one is warranted, Dr. Stanulis' evaluation in support of petitioner's PCR claims did not compel the conclusion that a psychological evaluation would have been helpful to petitioner's case. Petitioner's contention that such an evaluation would have shown him to be no risk to re-offend is, at best, speculation.

In addition, petitioner's attorneys found no support for a claim of long-term mental illness in the 37 letters submitted on his behalf. Instead, those letters showed a respectful person who had come from a loving family and had established with those who knew him as a hardworking, capable, and caring person. Respondent's Exhibit 125. The supportive letters also showed petitioner to be a good and responsible person when not under the influence of narcotics. *Id.* This would have spoken directly to

14 - OPINION AND ORDER

petitioner's future dangerousness assuming treatment of his drug problem.

Petitioner also faults his attorneys' strategy of tailoring their mitigation presentation to their subjective impressions of the particular sentencing judge presiding over the proceeding. But such a strategy was a reasonable one because it was based upon many years of past experience and the opinions of four different local attorneys. In fact, if petitioner's attorneys had argued as petitioner now claims they should have and a true life sentence had still been imposed, he would likely be able to present a much stronger claim. Specifically, had petitioner's attorneys followed the approach he now suggests, they would have been required to: (1) ignore both petitioner's repeated statements that a psychological review would not be fruitful as well as his support for the mitigation strategy ultimately employed; (2) decline to introduce the voluminous letters of support offered on petitioner's behalf; and (3) disregard not only their own opinions as to what kind of mitigation argument the sentencing judge would be most receptive to, but also dismiss the same viewpoint of petitioner's defense attorney in Linn County as well as the prosecuting attorney in Marion County. After ignoring all of this information, the attorneys may have obtained a psychological review much like that offered by Dr. Stanulis during PCR which was not helpful. Consequently, the court perceives petitioner to be arguing in favor

15 - OPINION AND ORDER

of a mitigation argument that was not only unsupported by the evidence during his PCR trial, but is also weaker than the one actually presented.

In any event, the mitigation approach petitioner now favors would not have changed the nature of petitioner's crime or his extensive criminal history, both of which the sentencing judge expressly relied on when reaching his decision to impose a true life sentence. His attorneys attempted to minimize the impact of both of these factors by advising petitioner to plead guilty so as not to highlight the inflammatory facts of his crime, and by not requesting a presentence investigation report which would have emphasized his lengthy criminal history. The Sixth Amendment did not require petitioner's attorneys to do more.

Because the attorneys' mitigation strategy was sound, the PCR trial court's decision denying this relief on this claim was neither contrary to, nor an unreasonable application of, clearly established federal law.

///
///
///
///
///
///
///

## CONCLUSION

For the reasons identified above, the Amended Petition for Writ of Habeas Corpus (#10) is denied. The court declines to issue a Certificate of Appealability on the basis that petitioner has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

DATED this 5th day of December, 2013.

_____
Michael H. Simon
United States District Judge

17 - OPINION AND ORDER